We'll move now to case number two. That is case numbers 19-1441 and 19-1442. And we are going to begin first with argument from the appellant. And Ms. O'Connell, we'll start with you. May it please the court, I'm Assistant Attorney General Erin O'Connell on behalf of the Respondent Warden. This court should reverse the grant of habeas relief in this case because it rested on two errors by the district court. First, the district court erred by failing to record the state court's adjudication of the deference required by section 2254D. And second, the district court erred for faulting appellate counsel for failing to raise a meritless sufficiency issue on petitioner's direct appeal. And I'd focus first on the adjudication of petitioner's claim. The Supreme Court has made clear at least twice in Harrington v. Richter and Johnson v. Williams that a state court is to be presumed to have adjudicated on the merits every claim that's been presented to it. The presumption applies even where the state court opinion makes no reference at all to the claim at issue. In this case, however, the state appellate court on post-conviction appeal expressly adjudicated petitioner's claim and held that appellate counsel was not ineffective. Its only failure was to mention one aspect of that claim, namely appellate counsel's failure to raise the sufficiency issue on appeal.     The Supreme Court has made clear at least twice in Harrington v. Richter and Johnson to have also adjudicated that component of the claim. The presumption can be overcome, but the petitioner must come forward with evidence that shows that the state court did not adjudicate the claim, perhaps because it was inadvertently overlooked. Here, petitioner has nothing in the record to cite, and the district court referred only to the state appellate court's failure to expressly address the claim as evidence that       Its only failure was to mention one aspect of that claim, namely appellate counsel's no in education and teacher's, but the presumption can be overcome, but the petitioner must come That evidence just triggers the presumption under Herrington and Johnson and its illogical to find that the same omission by the state court that triggers a presumption also constitutes clear evidence that would overcome that presumption I'm not so sure on this point I know what else the defendant habeas petitioner could have done, and the reason I say that is because what he points to if I understand is he points to the first district's appellate decision, which you're referring to, and that's a lengthy reasoned opinion, it's not a summary order, and at the end of that there is a one or two page document that the petitioner wishes to advance in federal habeas. So it just seems to me that why isn't he on sufficient ground to say that's exactly what Johnson versus Williams had in mind as kind of an exception to the presumption. It doesn't mean you may ultimately prevail, but on this particular point it just struck me that he has the upper hand on that. And I would agree that there was no express mention of this aspect of the claim. I would point the court to this court's opinion in Lee versus Avila, which makes clear that the opinion should be read also in the context of the briefing. So I would refer the court to his briefing on direct appeal, or I'm sorry, on the post-conviction appeal regarding appellate counsel's ineffectiveness, and the brief itself focused on that aspect that was expressly adjudicated. He argued that primarily trial counsel was ineffective for failing to call to alibi witnesses. In another section he mentioned appellate counsel. He said appellate counsel was therefore ineffective for failing to raise trial counsel's effectiveness. And there was an additional sentence where he also said, and appellate counsel failed to raise obvious issues, including but not limited to sufficiency. So he, in his brief, had failed to emphasize that as a key component of the claim. And the court, although that may have been sufficient to preserve it for habeas review, the court was certainly justified in viewing that as insubstantial, having not been given any sort of an analysis that would convince the court that appellate counsel was ineffective on that basis. So the court should read the state court's opinion in that light, that this was, I would say, almost an afterthought or just an additional contextual point about appellate counsel, but really the focus of his brief was on appellate counsel's failure to raise trial counsel's effectiveness for the alibi witnesses. Ms. O'Connell, when you're referencing the sufficiency of the evidence, are you placing under that umbrella the corpus delicti analysis as well? I think that's fair. I would note he didn't specifically mention corpus delicti in the brief, but the Illinois courts upheld that that is a sufficiency claim, the corpus delicti. Certainly the appellate court didn't get into that issue, and certainly not the corpus delicti aspect, because it wasn't fully briefed. I would note, though, that the second error in the district court's reasoning was in finding that this was a meritorious claim under state law. The court appears to have misconstrued Illinois' corpus delicti doctrine, which requires that there be more than simply a confession proving that a crime has actually occurred. But here that means that there has to be evidence that shows that someone, without identifying that person, attempted to murder the victim, Garrett, in this case. And as we've noted, it's proven completely outside of the confession that Garrett was shot twice by someone who immediately got out of a van, aimed the gun at him, and began shooting. If the district court's interpretation of the corpus delicti rule is accurate, that there has to be some corroboration that Mr. Winfield is the one who did it, in addition to corroboration that the act itself occurred. Can you still prevail here? Yes. And is that based on the fact that you think there is corroboration? Yes. Explain, please. Well, exactly. So there is corroboration. So Petitioner confessed that he was the one that did the shooting. The victim, Garrett, also identified Petitioner as the one that And given the trial court's credibility determination with respect to Garrett, how much weight can we put on that? Can that corroborate? So I think it's an overstatement to say that the court expressly rejected all of Garrett's testimony. I think he said he wasn't much better than Currie, who he did expressly reject. Right. And we're not relying on Currie at all. But the court said, and obviously that shows it's a little bit better than Currie, but it's significant that it credited the Petitioner's confession that were corroborated by Garrett's testimony and the aspects of Garrett's testimony that were corroborated by the confession. So it had two pieces of evidence that Petitioner was the one that did the shooting and Petitioner was the one that did the shooting of Garrett. So are you saying that we could implicitly determine what aspects of Garrett's testimony the trial court relied on or found credible just by the court's findings in general, even though the court didn't specifically say, I'm crediting Garrett on this? Well, under Jackson, on the sufficiency analysis, the court has to construe the testimony in the light most favorable to the people. And it doesn't typically focus on the determinations of the actual fact finder. Juries obviously don't state their reasoning. Right. But here you have a specific credibility determination, which I think takes it outside of that realm where you were about to say, juries, we don't know what they credit. But here we do know what the trial fact credited. I do think it's an overstatement, though, to say that the court made a credibility determination that Garrett could not be trusted in any respect. So how do we determine, for purposes of habeas review, what testimony of Garrett's the trial court accepted? I would say that the court should construe the testimony in the light most favorable to the people under the Jackson standard to the extent it considers the fact finder's own determinations. It should not construe those beyond what the trial judge said specifically. So it is fair, I think, for the court to say, Curry's testimony was plainly discredited in its entirety. The record is not so clear with respect to Garrett. I think the court did express reservations about his credibility because he didn't identify Petitioner immediately at the hospital, even though he knew his name or nickname. He didn't identify him. So the court did express that there were concerns about his testimony. But if we don't consider Garrett's testimony, is there sufficient evidence in the record for corroboration under the district court's view of corpus delecti? If the court construes corpus delecti as going beyond the actual facts of the crime? Correct. If we construe it the way the district court did here, that it requires not just corroboration of the act itself, but corroboration that Mr. Winfield is the one who committed that act, can we find that corroboration without Garrett's testimony? So Illinois law would require, you can rely on the confession as part of your proof. Yes. But if you're going to do that, the confession has to be corroborated. Correct. And that's my question. Putting aside Garrett's testimony, if we can't rely on Garrett and we can't rely on Curry, given credibility determinations, is there sufficient evidence in the record that would corroborate Mr. Winfield's confession? Yes. What is that? Mr. Hartman's testimony corroborated the details of petitioner's confession about the type of vehicle that he arrived in, where he did the shooting, mostly how the shooting itself transpired, that he exited the van immediately and began shooting at Garrett. Under Illinois law, not every single detail of the confession has to be corroborated before the court can rely on that as proof of corpus delecti. And if the court were to construe that as also encompassing the identity, Illinois law would be satisfied by the fact that all those details were corroborated. And then what petitioner himself admitted, consistent with those details, that he was that person that did the shooting. And the district court found that there were inconsistencies with Mr. Hartman's and Mr. Winfield's, with Mr. Hartman's testimony and with Mr. Winfield's confession. What impact should that have on the cooperation under corpus delecti? Under state law, it doesn't have to align in every particular. So where do we draw the line on what it does have to corroborate? I mean, I don't, we're getting into sort of interesting hypotheticals. I mean, I would disagree. I don't think that's hypothetical here. If we get to that aspect, if we, I don't think that's a hypothetical. So my reading of Illinois law is that it's sufficient that some of the details be corroborated. And I would emphasize where the two, where they diverge. The key area where the Hartman's testimony and petitioner's statement diverges on how many shooters there were. And I think it's clear that petitioner in his confession was trying to limit his culpability. I think it was known at that time that Garrett had survived and Garrett could identify petitioner as the person who shot him. The issue was, did he also shoot Stovall, the victim who was deceased and who was not able to do that identification? Petitioner in his statement did not admit that he shot the victim who died. He said that he got out of the van and as he was shooting at Garrett, he heard gunshots, additional gunshots coming from somewhere else. So that exculpatory part of his statement conflicts with Hartman's testimony that there was a single shooter. That was the state's theory was certainly that there was a single shooter. And the trial court ultimately did not decide, definitively decide how many shooters there were. The court said the only evidence of that comes from the petitioner. I'm not comfortable beyond a reasonable doubt resting on that alone of finding that he was also responsible for killing Stovall. And there was also some evidence that there were two different types of bullet at issue. And the court said there's a gap here where the state has not proven that that bullet could have come from the same gun that shot Garrett. So the court said, I find reasonable doubt. But it didn't say I reject outright this portion of petitioner's statement or I find one worthy other. The court just said I don't find the evidence sufficient here. Ms. O'Connell, what case, what Illinois case do you think best supports your reading and construction of corpus delicti as you've articulated it today? Lara? I would, Lara sets it out pretty clearly. That case does make clear that corpus delicti and the identity of the perpetrator are two separate elements, which is one key point here. We've cited, I think, a number of cases that stand for the principle that corpus delicti, if it's proven outside of a confession, that suffices by itself and the court need not take the additional step of seeing what corroboration there was for the confession. Yeah, do you, that precise point that you just made right there, is that your view of Illinois law? In other words, there's absolutely no question here that the corpus, the kind of strict corpus delicti aspect of this is satisfied. One, we have somebody that's dead and two, we have another person that is shot and there's no question that the crime itself occurred. Correct. And so is your view of Illinois law that at that point, the inquiry can stop with the confession. There is absolutely no need under Illinois law to look for any form of corroboration. And if that's your view, what case or cases do you think best support that? We cited a number that were admittedly murder cases and they focused on the existence of the body as being sufficient proof by itself of the murder. We're sort of extending that to the attempted murder context. Don't worry about the crime. I'm just asking you, what cases? Is it Lara? Lara was not itself a murder case. There's a bunch of child sex offense cases, right? That's correct. I think there are two contexts where this has come up centrally. One of them is the murder context and the other is the child sexual assault cases in saying that a confession alone is not enough. We did cite a number of older cases and I can get the names for you. I'll look back at your brief. So we do have a number of different theories here that it can be proven without the confession alone and that if the confession needs to be considered, it was adequately corroborated. And even if the corpus delicti extended to identity, it was adequately corroborated to the... it was corroborated to the point that it could be used to identify petitioner's perpetrator. I'm going to keep you up for a little bit longer. Is the corroboration requirement constitutionally mandated? No. I don't believe that it is. It's not an extension of federal cases, the state doctrine on this. The constitutional issue is the sufficiency. So the Constitution requires that if you have an element that needs to be proven, and state law sort of defines what needs to be offered in support of that, the Constitution requires that there be enough for a rational fact-finder to find that requirement on that evidence. One other... If I may, please, one other question back to the epidefference. If we find that epidefference does apply to the claim of ineffective appellate counsel, can we resolve it, or does it have to go back since the district court did a de novo review? The court can resolve it. I mean, this court has already remanded once to the district court for that analysis, and the district court still did not conduct the 2254-D analysis. So can we do that analysis in the first instance? Yes, this court could do so in reversing the grant of habeas. Thank you. We'll now hear from Mr. Tice. May it please the court, Bill Tice for Mr. Winfield. Of course, as the court knows, we've got two issues, appellate counsel and trial counsel, and it seems that you've spent all your time on the appellate counsel. And, you know, I don't want to avoid that discussion, but I do want to talk about trial counsel. So let me just say a few things about appellate counsel, and hopefully we can have some time for trial counsel. One thing, and I think the court must have this clear by now, but I have to make doubly sure what we're talking about. This is not a case where Winfield is saying, my conviction had insufficient evidence. Set it aside under the due process clause, he's saying. I had a viable claim on appeal, and my appellate lawyer didn't adequately pursue that. And that's an important distinction, because the state, once again this morning, has waved around Jackson v. Virginia in front of this court. Illinois courts, although they refer to Jackson v. Virginia, and although they often make statements that seem to be very consistent with Jackson v. Virginia, they take a much more critical eye on sufficiency of the evidence. Convictions that would easily sail through this court don't always make it in the appellate court. If we disagree with that, if we think that the Illinois court does not take a more strict view of Jackson, can you still prevail on the appellate counsel portion of your argument? I mean, that's hard to say because we've never really fought that out. But if we talk about Jackson v. Virginia, where we've got a defendant essentially saying, yeah, I did it, it seems like that would pass muster. But I really have to urge that's not what this case is about. And the district court clearly understood that, even though the state kept arguing, oh, you have to rely on Jackson v. Virginia. Mr. Tice, I thought... I'm sorry, go ahead. Just one follow-up. You still have to look at Jackson to determine, at least as a starting point, to determine how viable or strong the sufficiency of the evidence argument would have been for purposes of your Strickland claim. Well, certainly it comes in in the sense that if I, as counsel on direct appeal, say, oh, my gosh, you know, this is never going to fly under Jackson v. Virginia, then I have to start looking more closely at the Illinois cases, which ties into these questions that the court has had about corpus delecti. And the court asks, what are the cases that the state relies on? And I would say that I rely, and these are all on page 40 of our opening brief, Lara, Fermi, and Perfecto. And once again, the state sort of suggests to you that, oh, Illinois corpus delecti law is very much like federal law. And in fact, it's not. Do you agree with the district court's interpretation of corpus delecti law? You don't seem to go as far in your briefs as to say you agree with that. I thought I had agreed with it. So you do agree with the district court's interpretation of what corpus delecti law under Illinois requires? Yes, I do, because even... To state it as clearly as possible, even though the defendant admits to the elements of the crime and admits that he's the perpetrator, if all the other evidence casts some doubt on what's he talking about, the Illinois courts are going to look at that. And that's something that would really apply in this case. Is it casting doubt or not corroborating? Because those are two separate things. I think in this case they're the same, because Winfield is saying, I shot him and I was one of two shooters, okay? And the only credible witness I witnessed said there was only one shooter and it wasn't Winfield. And as a result, the trial court at the end of the trial said, I don't know whether there was one shooter or two shooters. I really don't know. Mr. Tice, can I... I'm going to throw things by you and invite you to react, okay? Okay. As I read Mr. Winfield's main point, and it's beside me, I can't figure out why he did not file a motion to suppress his confession as involuntary, but that ship has long sailed. I think maybe he did, but it has sailed. All right, that's long gone. What he's arguing is not, hey, look, that confession was forged, fabricated, concocted, it's counterfeit, that's not my signature, it's nothing like that. He's arguing, quite articulately, it's coerced. Okay. We basically had a suppression hearing occur within the trial, because it was a bench trial. And he made the argument. He wasn't saying, Judge, I want to advance a motion to suppress. He was just doing it in the context of challenging the confession as evidence. And the trial judge emphatically rejected the contention and found that he was not kicked, etc., right? That the confession was voluntary. And I didn't try to challenge that. Okay. The corpus delecti doctrine seems to exist in no small part to kind of counter that concern that a confession may have been coerced, it may have been fabricated, etc. And I'm not making that up. I mean, that comes right out of Lara. Right. Lara says the primary purpose of the corpus delecti rule is to ensure the confession is not rendered unreliable due to either improper coercion of the defendant or the presence of some psychological factor. So given that that concern is what underpins the doctrine, corpus delecti seems like a misfit here. And the reason I say that is because there is no question the shooting happened. That's correct. No doubt whatsoever. The shooting's plural. So then the only question is, who should be held responsible for the shooting? Mm-hmm. Right? Yes. And given the finding that occurred at the trial level that I reject the contention that it's an involuntary statement, I just have a hard time seeing how corpus delecti applies. Well, I think that involuntary maybe covers more ground than physical abuse, illegal promises. It also covers a situation which is pretty common and I think is what happened here, is the police have him in the station for a long, long time. He's denying any involvement. They call in the state's attorney. She doesn't write down the things where he's denying that he's involved. And they plant in his mind the idea, well, just admit you shot at one of them. Now, the state wants to spin this as, he's so clever that he thinks he can minimize things by admitting to one and not the other. I would submit, and it's all speculation, but it's just as much speculation as the state speculation. The police were so clever that they thought, we've got this mope in here, we're going to supply him with this story, we're going to get him to admit that he shot at one but not the other, and presto, we're home. The problem is that all the other evidence, or the evidence from the only credible eyewitness, says there was only one shooter. Didn't he effectively explain all the circumstances surrounding the shooting to the trial judge? And the trial judge heard both accounts and unfortunately for Mr. Winfield, credited the state's account over his. And that was all about, did he make the statement? Well, the trial judge credited his account in the sense that he credited Winfield's admission to shooting at one but not the other. But in so doing... There's that second shooter in the trial judge. But rejected that he was kicked? Rejected that he wasn't read the statement? That's true, I can't deny that. But the facts of the event, the attempted murder, are utterly inconsistent with the way Winfield described it. One shooter versus two. That's the key fact. And the judge even throws up his hand and says, I don't know. So I see I've got about five minutes left and I'd really like to talk just a little bit about the ineffectiveness of trial counsel. Of course, on that one, the district court ruled against us and said that, number one, there was no deficient performance and she really didn't even get to the issue of prejudice. And the no deficient performance was based on the AEDPA deference to the state court findings that Winfield had not told his lawyer about the alibi defense. Now, maybe on some technical level that's kind of true because remember he told his lawyer he thought he was at J.C. Penney's although he said, I'm not really sure. But that's only part of the package. The other part of the package is that the mother and aunt come in and say he was at home asleep. He wasn't there, we live in that neighborhood, but he was home asleep at the time. And so when the Illinois Appellate Court says there was no way for the trial counsel to know about a potential alibi witness, that is clearly unreasonable fact-finding. How is that unreasonable in light of the trial court's credibility determinations with respect to the mother and aunt's testimony versus the testimony of Mr. Bloom? Because Mr. Bloom never said they didn't tell me. Mr. Bloom said, I don't remember. But why is it unreasonable for the trier of fact or for the trial counsel here to think he implicitly was saying that given the fact that his client told him, and he did remember this, that he was at J.C. Penney, and he tried to follow up on that alibi and it fell through? Well, because it wasn't a case of where Winfield was saying, I was at J.C. Penney. I know that, that's a fact. I was no place else. What he said to the lawyer was, I think I was at J.C. Penney, but I'm not sure. Is there anything in the record that Mr. Winfield has ever said he told his lawyer that he was at home? I know we have the aunt and the mom's testimony, but I didn't see anything in terms of post-conviction testimony, affidavits, where he said, I told Mr. Bloom I was at home, and he didn't follow up on that. No, the only place it appears is at the trial, which is remarkable because... But he doesn't say at the trial, I told Mr. Bloom I was at home. He testifies, I probably say I was at home. That's right. Which is different, for purposes of the ineffective assistance of counsel, from saying what he told his trial lawyer. See, what he testified at trial... It's kind of hard to understand what that means in terms of what he told the trial lawyer. But I would suggest to you, it's not just what he told the trial lawyer, it's what the other witnesses told the trial lawyer. But if we're looking at it from an unreasonable factual finding, my question for you is, the trial court, or the court making this determination, found that... Mr. Bloom was not told this, and that the aunt and mother hadn't told him at the time. And that his client, Mr. Winfield, had only told him about the JCPenney alibi. Given that there's nothing from Mr. Winfield himself, even though he had the opportunity to put this through an affidavit, or come in at the post-conviction hearing and testify, I told Mr. Bloom specifically I was at home. How can we find the trial court's finding unreasonable that he wasn't told? Because the trial lawyer never contradicted those two witnesses. Those witnesses were never impeached. And so it's your position that he told me he was at JCPenney, but the receipt was 3 hours off from the time of the shooting. That alone wouldn't implicitly contradict that? That's correct. I mean, because in defending a criminal case, you talk to the client, you come back to the client again, you talk to other witnesses who have sought you out, maybe you sought them out. You know, it's not that there's some ultimate truth that comes out at the very beginning, and it never changes. It's a process, I certainly understand that. But here it's a process plus, because he had the opportunity through the post-conviction hearings to put something in saying, I told my client that I was at home, and there's nothing in the record like that. So we only have the aunt and the mother's testimony that they told him, even though the aunt and the mother never told anybody else about this, including the investigators, until the time of the post-conviction. When you say the investigators, you mean the police? Yes. Well, you know, I think that's almost kind of unrealistic. Defense witnesses don't go and seek out the police, and even if they do, the police don't listen to them. There isn't any evidence that they told anybody else about the alibi, police or otherwise. I'll accept your statement on the police here, but there isn't any evidence that they told anybody else about this, including an investigator who went to talk to them. But they did tell the lawyer. And strangely enough, you know, the lawyer could have easily said, you know, it didn't happen, but the lawyer said, I don't remember, and we all know what that means. I see my time is up. I would just point out that as far as the performance is concerned, the district court entered a finding that the Illinois Appellate Court really didn't decide prejudice. She talked about performance, but the Illinois Appellate Court didn't decide prejudice and characterize whatever the Illinois Appellate Court had to say as dicta. But can we really say it's dicta here, where the state court found that the defendant had failed to establish either part of the Strickland test? The state court specifically said that, and the second part of that Strickland test is prejudice. So I don't know how we can say it's dicta. Well, and that brings us back then to the question of whether or not there really was overwhelming evidence of guilt because the confession corroborated. Because if you say that there was no prejudice, it's only because you're saying that the evidence is either overwhelming or very strong or satisfies Jackson v. Virginia or some variation of Jackson v. Virginia, we've already gone over that, so I won't trouble you any further. Thank you. Thank you, Mr. Tice. Ms. O'Connell, we'll give you two minutes on rebuttal. Thank you. I just wanted to really briefly just address the trial counsel ineffectiveness claim. There are two key pieces of evidence that contradict an inference that Petitioner told trial counsel that he was sleeping at home. The first is trial counsel's testimony at the post-conviction hearing. He didn't say, I don't remember any conversations at all about an alibi. He said, I recall very clearly Petitioner said that he was at JCPenney. I asked him to corroborate that. He said that they produced a receipt and that was off in terms of the alibi time. That was actually contradictory to an alibi that he was actually at home the entire day and never left. And the point of trial counsel not remembering further discussions was bolstered by the fact that he said if there had been any suggestion at all of a different alibi, I would have run that down. That's my practice. I'm an experienced criminal attorney. I think at this point he has, you know, a lot of experience with murder trials. So I would cite that as good evidence that there were no discussions about this other alibi, sleeping at home. And then also Petitioner's testimony at trial shows that counsel didn't think he was presenting a firm alibi because his testimony was equivocal as to where he was. You know, counsel said to him, where were you at the time? And he said, well, I think I was probably at home. That shows that he had not given counsel a firm alibi and he was not firm even in his testimony that he was sleeping at home. So there was no reason for counsel to investigate that alibi and seek corroborating witnesses. We would ask that this court affirm the denial of habeas relief on the trial counsel claim and reverse the grant of habeas relief on the ineffective assistance of appellate counsel claim. Thank you, Ms. O'Connell. Thank you, Mr. Tice. The case will be taken under advisement.